IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 12-40119-JAR |
| ROBERT HARSHBARGER, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

Robert Harshbarger is the sole defendant charged on one count of misbranding, one count of mail fraud, and five counts of health care fraud, based on allegations that he engaged in a scheme to defraud Kansas Dialysis Services, L.C. ("KDS") from approximately January 2004 through August 2009. The Indictment alleges that American Inhalation Medication Specialists, Inc. ("AIMS"), a pharmacy owned by Mr. Harshbarger in Kingsport, Tennessee, supplied KDS with iron sucrose that KDS allegedly believed to be the brand-name drug Venofer, but was in fact a non-branded iron sucrose product. Defendant filed a Motion to Transfer to the Eastern District of Tennessee (Doc. 10). The motion is currently before the Court and is fully briefed, and the Court is prepared to rule. As described more fully below, the Court denies Defendant's motion to transfer the case.

**I.     Factual Background**

The Indictment alleges that Defendant engaged in a scheme to defraud KDS from approximately January 2004 through August 2009. Defendant's pharmacy, AIMS, allegedly supplied KDS with iron sucrose that KDS believed to be the brand-name drug Venofer, but was in fact a non-branded iron sucrose product. Defendant allegedly sent invoices from AIMS, in

Tennessee, to KDS in Kansas, for Venofer, when in fact he knew that the product he sold was not Venofer. The Indictment alleges that on a call placed to Defendant in Tennessee, Defendant misinformed KDS about the source of the iron sucrose he sold to the company. The Indictment also alleges that Defendant again misinformed KDS about the source of the iron sucrose when Defendant called from Tennessee and left a voice message to KDS. Finally, the Indictment alleges that the iron sucrose AIMS prepared in Tennessee and shipped to KDS was misbranded under the Federal Food, Drug, and Cosmetic Act ("FDCA").

A Topeka Grand Jury indicted Defendant, and the government claims that the crux of Defendant's crimes occurred in Kansas, where he visited both financial harm and the reckless risk of physical harm on unsuspecting Kansas citizens. The government also claims that the majority of the victims and percipient witnesses live in Kansas. Defendant claims that the events alleged in the Indictment that occurred in Kansas do not bear on the conduct of Defendant, who, lacking personal knowledge thereof, will likely stipulate to those facts in any event. Defendant also argues that the facts and events that will be contested occurred in and emanated from Tennessee. Defendant now seeks an inter-district transfer to the Eastern District of Tennessee.

## II.     Legal Standard

Under Federal Rule of Criminal Procedure 18, the proper venue for criminal actions is normally "in [the] district in which the offense was committed." A court may transfer a proceeding to another district, upon motion, "[f]or the convenience of parties and witnesses, and in the interest of justice."[1] Federal Rule of Criminal Procedure 21 ("Rule 21") provides for

---

[1] Fed. R. Crim. P. 21(b).

transfers of criminal cases from one district to another.[2] The Supreme Court has listed the following factors that a court should consider when determining whether a case should be transferred under Rule 21: (1) location of defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.[3] No one factor is dispositive. The Court must strike a balance based on the relative importance of the factors in determining which forum "would be a more convenient location for the majority of the parties and witnesses."[4] The burden is on Defendant to justify a transfer under Rule 21(b);[5] if the factors are evenly balanced, the court should deny the motion to transfer.[6]

Relying on *United States v. Lawson*,[7] the government argues that Defendant must show specific prejudice from remaining in the current district in order to justify the transfer request, but *Lawson* only states that a district court does not abuse its discretion when it refuses to

---

[2] *Id.* ("Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice.").

[3] *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 243–44 (1964).

[4] *United States v. Leining*, No. 89-10063-01, 1990 WL 11605, at *3 (D. Kan. Jan. 25, 1990); *see also United States v. Ferguson*, 432 F. Supp. 2d 559, 562 (E.D. Va. 2006) (granting transfer in light of "substantial balance of inconvenience").

[5] *United States v. Lopez*, No. 02-40021-02-RDR, 2002 WL 31498984, at *2 (D. Kan. Sept. 5, 2002). (citing *In re United States*, 273 F.3d 380, 388 (3d Cir. 2 001)).

[6] *United States v. Bowdoin*, 770 F. Supp. 2d 133, 140 (D.D.C. 2011).

[7] 670 F.2d 923 (10th Cir. 1982).

transfer a defendant who has not shown a specific prejudice.[8] *Lawson* does not speak to what may justify a transfer, and the Court adopts the standard that "[i]t is enough if, all relevant things considered, the case would be better off transferred to another district."[9]  "[C]hange of venue in a criminal case is discretionary, and a trial judge's decision on the matter is entitled to deference."[10]  Venue is proper in both Tennessee and Kansas.

### III. Discussion

Defendant maintains that *Platt* factors (1), (2), (3), (4), (5), (6), (8), (9), and (10) militate strongly in favor of transfer to the Eastern District of Tennessee, specifically to the Greeneville Division.  The government argues that factors (1), (2), (3), (6), (7), (8), and (9) all favor trying the case in Kansas.

*1. Location of Defendant*

The government argues that Defendant's location has no independent significance in determining whether to transfer venue, suggesting instead that "the significance of the defendant's residence derives 'solely from its relationship to the convenience of witnesses, records, and counsel.'"[11]  This reading, however, would subsume the first *Platt* factor entirely within factors (2), (4), and (7), rendering the first factor meaningless.  The government's interpretation of the first factor is incorrect.  Read correctly, this factor favors transfer to Tennessee, as Defendant is located in Tennessee and has never physically entered the state of Kansas in furtherance of his alleged crime.

---

[8]*Id.* at 926.

[9]*In re Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995).

[10]*United States v. Hunter*, 672 F.2d 815, 816 (10th Cir. 1982) (citation omitted).

[11]Doc. 23, at 7 (citing *Jones v. Gasch*, 404 F. 2d 1231, 1240 (D.C. Cir. 1967)).

*2. Location of Possible Witnesses*

The government argues that the victims of Defendant's scheme and the government's primary percipient witnesses reside and work in Topeka and in Kansas. Those fact witnesses will include employees of KDS, all of whom reside in Kansas; doctors associated with KDS, all of whom live in Kansas; and insurance victims, with three of the four witnesses being from Kansas or Kansas City, Missouri. Defendant argues that he is likely to stipulate to the events alleged in the indictment that occurred in Kansas, and that his defense will center on his actions in Tennessee. Based on this defense, he plans to call fact and character witnessesn primarily residing in Tennessee. In spite of Defendant's willingness to stipulate, the "the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, . . . a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it."[12] The government is entitled to put on its evidence and call its witnesses, and it appears the bulk of the witnesses are located closer to Kansas. This factor favors trying the case in this district.

*3. Location of Events Likely to be in Issue*

The government argues that Defendant's crimes occurred in Kansas, where the misbranded drug was received by KDS, then administered to Kansas dialysis patients. The government also notes that KDS paid Defendant from Kansas, that Defendant billed the health care benefit programs from Kansas, and that the patients who received the drug are in Kansas. Defendant notes that he allegedly purchased and received the components of compounded iron sucrose from and into Tennessee, he compounded the allegedly misbranded drugs in Tennessee pursuant to Tennessee law, and all evidence of that conduct as it bears on the defense is located

---

[12]*Old Chief v. United States*, 519 U.S. 172, 186–87 (1997).

in Tennessee. Defendant argues that Tennessee is the undisputed location for all of his alleged conduct. This factor is neutral with respect to the transfer request.

### 4. *Location of Documents and Records likely to be Involved*

The government argues that the documents and records, while located in both Kansas and Tennessee, are not so voluminous that they could not be moved—Defendant's documents are as easily transportable as the government's evidence. Defendant argues that the jury might visit his place of business, but this seems unlikely to be necessary given the issues in this case at this time. Given the portability of documents, particularly in electronic copy, this factor is neutral as to a transfer.

### 5. *Disruption of Defendant's Business Unless Case is Transferred*

Defendant argues that this factor favors Defendant, since the pharmacy is a family business. Oddly, Defendant relies more on the impact of having his wife away from the business, perhaps because he himself is no longer licensed as a pharmacist in Tennessee. His wife would only be required to be at trial if she were a witness, and would not be gone long, so the impact of her absence, at least, would be minimal. The government argues that the business is large enough to maintain itself without Defendant, that Defendant's son is a licensed pharmacist who works at the pharmacies, and that, according to Pretrial Services, Defendant stopped working at his pharmacy over a month ago, in anticipation of his trial. On balance, disruption of Defendant's business would probably be only minimally decreased if the trial were transferred to Tennessee, so this factor is neutral.

### 6. *Expense to the Parties*

Expense to the parties includes both expense to the government and expense to Defendant, although the Court is cognizant that government resources are far superior to an

individual's. Further, although Defendant is financially well-off, a Defendant's financial means are not a controlling element in assessing this factor.[13] A criminal trial is expensive for those involved, regardless of where it is held, but in light of the location of the witnesses and counsel, on the whole it would be more expensive to move this trial out of the District of Kansas. Although this factor is close, it marginally favors keeping the trial here.

*7. Location of Counsel*

Defendant is represented by Washington, D.C.-based counsel and by Kansas counsel. No Tennessee counsel has yet entered an appearance in this case. The government maintains that transferring the case to another prosecutor is unrealistic and that the local U.S. Attorney's office in Greeneville, Tennessee is relatively small and could not accommodate visiting counsel. This factor favors trying the case in Kansas.

*8. Relative Accessibility of Place of Trial*

Topeka is roughly 70 miles from Kansas City International Airport ("MCI"), and although Greeneville is roughly 70 miles from the airport in Knoxville, Tennessee ("TYS"), MCI had almost 5 million commercial passenger boardings as compared to 840,000 at TYS, as of 2008 (the last year for which data is available). Topeka is also roughly eight times the size of Greeneville, Tennessee. This factor favors trying the case in Kansas.

*9. Docket Condition of each District or Division Involved*

As the government noted, the Eastern District of Tennessee-Greeneville has a per-judge criminal caseload that is among the highest in the nation and is the highest in the Sixth Circuit. There is only one active judge in Greeneville, Judge Greer, who has a very high case load with a large civil class action trial pending. In light of this case and the ongoing ongoing caseload in

---

[13]*United States v. Jessup*, 38 F.R.D. 42, 46–47 (M.D. Tenn. 1965).

the Eastern District, this factor favors trying the case in Kansas.

   *10. Other Special Elements which might affect the Transfer*

Defendant argues that press releases by the USAO in Kansas may have created a public prejudice against him, making a fair trial here more difficult, but the government points out that the same press releases went out in Tennessee, and the government has submitted exhibits of several news stories about the case from Tennessee.  Defendant also argues that the parties agreed Tennessee law would be the controlling law in this case, and suggests that a Tennessee federal district court would be better able to interpret Tennessee law.  The government answers that the contractual provision has no bearing on the case, that this Court can adequately interpret Tennessee law, and that no Tennessee law is at issue.  On the whole, after considering these arguments, the Court concludes that these special elements do not affect the transfer.

In sum, the first factor favors transfer.  The third, fourth, fifth, and tenth factors are neutral with respect to a transfer.  The sixth, seventh, eighth, and ninth factors favor trying the case in Kansas.  On the balance, all relevant things considered, the case would be better off tried in Kansas.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Transfer to the Eastern District of Tennessee (Doc. 10) is DENIED.

**IT IS SO ORDERED.**

Dated: January 16, 2013

                                                                S/ Julie A. Robinson
                                                                JULIE A. ROBINSON
                                                                UNITED STATES DISTRICT JUDGE